1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   ROBERT MITKA,

9                          Petitioner,          CASE NO. C19-193-MJP-BAT

10          v.                                  **REPORT AND
                                                RECOMMENDATION**
11   ICE FIELD OFFICE DIRECTOR,

12                          Respondent.

13                          **INTRODUCTION**

14          Robert Mitka, a native and citizen of the United Kingdom, brings this 28 U.S.C. § 2241

15   habeas action to challenge his continued detention by U.S. Immigration and Customs

16   Enforcement ("ICE") at the Northwest Detention Center.  He has been detained without bond

17   since May 1, 2018, and he seeks release or a bond hearing.  Mr. Mitka initiated this action *pro se*,

18   and the Court subsequently appointed the Federal Public Defender to represent him.

19          The Government has moved to dismiss, arguing that Mr. Mitka's detention is statutorily

20   authorized and that he is not entitled to a bond hearing or release.  Mr. Mitka's response did not

21   address the statutory basis for his detention and instead argued that his detention violates his due

22   process rights.  The Court ordered Mr. Mitka to file a supplemental brief addressing the statutory

23   basis for his detention, but he did not comply with the Court's order.  For the reasons explained

REPORT AND RECOMMENDATION - 1

below, the Court concludes that Mr. Mitka is not entitled to release, but due process requires that the Government provide him with a bond hearing.

## BACKGROUND

Mr. Mitka entered the United States in October 2016 under the Visa Waiver Program ("VWP"). Dkt. 10-1. The VWP allows noncitizens from designated countries to visit the United States without obtaining a nonimmigrant visa. 8 U.S.C. § 1187(a). VWP entrants are subject to numerous restrictions, including waiver of any right "to contest, other than on the basis of an application for asylum, any action for removal of the [noncitizen]." 8 U.S.C. § 1187(b)(2); *Nicusor-Remus v. Sessions*, 902 F.3d 895, 896 (9th Cir. 2018).

Mr. Mitka was authorized to remain in the United States until January 20, 2017, but he overstayed. Dkt. 10-1. On May 1, 2018, U.S. Customs and Board Patrol officers encountered him and determined that he was deportable based on his overstay. *Id.* He was ordered removed from the United States and made a formal claim for asylum. *Id.* On September 18, 2018, an immigration judge ("IJ") denied his request for asylum, withholding of removal under the Immigration and Nationality Act, and withholding of removal under the Convention Against Torture. Dkt. 10-4. On October 11, 2018, he appealed to the Board of Immigration Appeals ("BIA"), and his appeal remains pending. Dkt. 10-3.

On December 12, 2018, an IJ denied Mr. Mitka's request for release on bond because he is in asylum only proceedings. Dkt. 10-2. On July 11, 2019, ICE officials reviewed his custody status and denied release, finding that he presents a significant flight risk. Dkt. 16-1.

## DISCUSSION

The Government argues that § 1187 authorizes Mr. Mitka's detention and that IJs lack jurisdiction to hold bond hearings for noncitizens detained pursuant to the VWP. Dkt. 9 at 5-6

REPORT AND RECOMMENDATION - 2

1    (citing, *inter alia*, *Matter of A-W-*, 25 I. & N. Dec. 45 (BIA 2009) (holding that § 1187(c)(2)(E)

2    authorizes the detention of VWP noncitizens, and that IJs lack jurisdiction to hold bond hearings

3    for such individuals)).  The Court expressly ordered Mr. Mitka to file a supplemental brief

4    addressing the statutory basis for his detention, but he failed to do so.  Because Mr. Mitka does

5    not oppose the Government's argument on this issue, the Court presumes that the Government's

6    position is correct.[1]  *See* W.D. Wash. Local Rules LCR 7(b)(2) ("Except for motions for

7    summary judgment, if a party fails to file papers in opposition to a motion, such failure may be

8    considered by the court as an admission that the motion has merit."); *Olson v. Uehara*, No. 13-

9    782, 2014 WL 6808818, at *8 (W.D. Wash. Dec. 2, 2014) (dismissing claims under LCR 7(b)(2)

10   based on plaintiff's failure to specifically address defendants' arguments in his response brief).

11   Therefore, the Court concludes that Mr. Mitka does not have a statutory basis to obtain a bond

12   hearing or release from detention.

13          The question, then, is whether Mr. Mitka's prolonged mandatory detention of more than

14   16 months violates his due process rights.  Mr. Mitka argues that he is entitled to release because

15   his detention is indefinite.  Dkt. 13 at 1.  In *Zadvydas v. Davis*, the Supreme Court concluded that

16   "indefinite" detention of noncitizens would "raise serious constitutional concerns" and therefore

17   construed the statute governing post-removal order detention as containing an implicit

18   "reasonable time" limitation.  533 U.S. 678, 682 (2001) (holding that noncitizens detained

19   indefinitely must be released).  Detention becomes "indefinite" if, for example, the country

20   designated in the removal order refuses to accept the noncitizen or if removal is barred by the

21

22   _____

     [1] Some district courts have determined that *Matter of A-W-*, the BIA case on which the Government relies, is not
     entitled to *Chevron* deference.  *See, e.g.*, *Neziri v. Johnson*, 187 F. Supp. 3d 211, 213 (D. Mass. 2016); *Sutaj v.*

23   *Rodriguez*, No. 16-5092, 2017 WL 66386, at *5 (D.N.J. Jan. 5, 2017); *Emilia v. Ahrendt*, No. 19-5060, 2019 WL
     1123227, at *2-*3 (D.N.J. Mar. 12, 2019) (following *Sutaj*).  Because Mr. Mitka does not dispute the Government's
     claim that *Matter of A-W-* governs the statutory analysis, the Court does not address the issue.

REPORT AND RECOMMENDATION - 3

laws of this country.  *See Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 948-49 (9th Cir. 2008) (noncitizen's nearly seven-year detention was not "indefinite" because nothing would prevent his removal if he were ultimately unsuccessful in his then-pending petition for review).  There is no evidence in the record that the United Kingdom would not accept Mr. Mitka if he loses his asylum claim or that removing him under such circumstances would violate the laws of this country.  Accordingly, he is not entitled to release under *Zadvydas*.

Mr. Mitka also argues that his prolonged detention violates due process because it does not bear a reasonable relationship to the asserted governmental interests in continued detention. Dkt. 13 at 2-3.  Judges in this District have determined that unreasonably prolonged mandatory detention under 8 U.S.C. §§ 1225(b) and 1226(c) without a bond hearing violates due process. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019), *appeal pending* (Robart, J.) (addressing § 1225(b), which authorizes mandatory detention for unadmitted noncitizen detainees); *Martinez v. Clark*, No. 18-1669-RAJ, Dkt. 17 (W.D. Wash. May 23, 2019) (Theiler, M.J.) (Report and Recommendation addressing § 1226(c), which authorizes mandatory detention for certain criminal noncitizens in removal proceedings).  As Judges Robart and Theiler recognized, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."  *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018); *see also Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued

detention became unreasonable or unjustified.").  The Court concludes that the Ninth Circuit's constitutional concerns apply to VWP entrants who are detained pending asylum only proceedings.

To determine whether a noncitizen's prolonged mandatory detention has become unreasonable, Judges Robart and Theiler adopted a multi-factor, case-specific analysis used by many other courts.  *See Banda*, 385 F. Supp. 3d at 1106-07, 1116-18; *Martinez*, No. 18-1669-RAJ, Dkt. 17 at 12-19.  The factors courts consider when the petitioner is an unadmitted noncitizen detained under § 1225(b) are "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."  *Banda*, 385 F. Supp. 3d at 1118 (quoted source omitted).  The analysis for criminal noncitizens detained under § 1226(c) involves two additional factors: whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable, and the nature of the crimes the petitioner committed.  *Martinez*, No. 18-1669-RAJ, Dkt. 17 at 19.  As there is no evidence Mr. Mitka has committed any crimes, the Court will consider the factors outlined in *Banda*.

The first factor, the length of detention, is the most important.  *Banda*, 385 F. Supp. 3d at 1118.  Mr. Mitka has been detained for over 16 months, which is "a very long time."  *Id.* (concluding that 17-month detention was "a very long time" and collecting cases that granted bond hearings for petitioners who were detained between 9 and 19 months).  Thus, this factor strongly favors granting a bond hearing.

"Second, the Court considers how long the detention is likely to continue absent judicial

intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Id.* at 1119 (quoted source omitted).  Mr. Mitka's appeal has been pending with the BIA since October 11, 2018.  If the BIA affirms, Mr. Mitka will have the opportunity to seek review in the Ninth Circuit.  This process may take up to two years or longer.  *Id.*  Accordingly, this factor favors granting a bond hearing.

Third, the Court considers the conditions of the facility where Mr. Mitka is detained.  *Id.* "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (quoted source omitted).  Neither party has submitted evidence regarding the conditions of Mr. Mitka's confinement at the Northwest Detention Center, and therefore the Court concludes that this factor is neutral.  *See id.*

As to the fourth and fifth factors, the Court considers the nature and extent of any delays in the removal proceedings caused by Mr. Mitka and the government, respectively.  *Id.* at 1119-20.  As Judge Theiler explained,

> "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.* [*v. Sec. of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)] (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).  Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Ly* [*v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)]; *see also Sopo* [*v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018)] ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [noncitizen].").  With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . .  Continued detention will also appear more unreasonable when the delay in the proceedings

was caused by the immigration court or other non-ICE government officials."
*Sajous* [*v. Decker*], [No. 18-2447,] 2018 WL 2357266, at *11 [(S.D.N.Y. May 23,
2018)] (citing *Demore* and *Reid* [*v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016),
*vacated*, 2018 WL 40000993 (1st Cir. May 11, 2018)]).

*Martinez*, No. 18-1669-RAJ, Dkt. 17 at 21-22.

Mr. Mitka was arrested on May 1, 2018, an IJ denied his asylum claim on September 18,

2018, he filed his appeal with the BIA on October 11, 2018, and his appeal remains pending

eleven months later.  Given that the IJ ruled on Mr. Mitka's asylum claim less than six months

after it was filed, it does not appear that either party engaged in deliberate delay tactics.  *See* 8

U.S.C. § 1158(d)(5)(A)(iii) (directing the Attorney General to establish procedures for IJs to

resolve asylum claims within 180 days of filing).  Mr. Mitka timely appealed.  Most of the delay

appears to have stemmed from the BIA's crowded docket.  "Although not the result of

intentional action on behalf of government officials, this delay is attributable to the

Government."  *Martinez*, No. 18-1669-RAJ, Dkt. 17 at 23 (citing *Sajous*, 2018 WL 2357266, at

*11 (citing *Ly* for the proposition that "the operative question should be whether the [noncitizen]

has been the cause of the delayed immigration proceeding and, where the fault is attributable to

some entity other than the [noncitizen], the factor will weigh in favor of concluding that

continued detention without a bond hearing is unreasonable"); *Durkay v. Decker*, No. 18-2898,

2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court

in favor of the petitioner)).  Thus, the fourth and fifth factors weigh in Mr. Mitka's favor.

The final factor is "the likelihood that the final proceedings will culminate in a final order

of removal."  *Banda*, 385 F. Supp. 3d at 1120 (quoted source omitted).

In other words, the Court considers whether the noncitizen has asserted any
defenses to removal.  *Sajous*, 2018 WL 2357266, at *11.  Where a noncitizen has
not asserted any grounds for relief from removal, presumably the noncitizen will
be removed from the United States, and continued detention will at least
marginally serve the purpose of detention, namely assuring the noncitizen is

removed as ordered. *Id.* (citing *Demore*). But where a noncitizen has asserted a good faith challenge to removal, "the categorical nature of the detention will become increasingly unreasonable." *Id.* (quoting *Reid*, 819 F.3d at 500).

*Banda*, 385 F. Supp. 3d at 1120. Mr. Mitka submitted an asylum application, but the IJ denied his requests for relief. Mr. Mitka has appealed that determination, and the Court does not have sufficient information to determine whether the appeal is nonfrivolous or whether Mr. Mitka ultimately will prevail. Accordingly, the Court concludes that this factor does not weigh in favor of either party. *See id.* (concluding that this factor was neutral under similar facts).

In sum, four of the six factors weigh in favor of granting Mr. Mitka a bond hearing, and two factors are neutral. The Court thus concludes that Mr. Mitka's continued mandatory detention has become unreasonable and that due process requires the Government to provide him with a bond hearing. *See id.* (granting a bond hearing in a similar situation). At the bond hearing, the Government must provide clear and convincing evidence to justify Mr. Mitka's continued detention. *Id.* at 1120-21. The bond hearing also must comply with the procedural requirements established in *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *Banda*, 385 F. Supp. 3d at 1121.

## CONCLUSION AND RIGHT TO OBJECT

The Court recommends that the Government's motion to dismiss, Dkt. 9, be **DENIED** and Mr. Mitka's habeas petition, Dkt. 4, be **GRANTED** in part and **DENIED** in part. Mr. Mitka is not entitled to an order of release, but he is entitled to a bond hearing. The Court thus recommends that the Government be ordered to provide Mr. Mitka with an individualized bond hearing that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), within 30 days of the order on this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

1        This Report and Recommendation is not an appealable order.  Therefore a notice of

2   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3   assigned District Judge enters a judgment in the case.  Objections, however, may be filed and

4   served upon all parties no later than **September 20, 2019**.  The Clerk should note the matter for

5   **September 20, 2019**, as ready for the District Judge's consideration if no objection is filed.  If

6   objections are filed, any response is due within 14 days after being served with the objections.  A

7   party filing an objection must note the matter for the Court's consideration 14 days from the date

8   the objection is filed and served.  The matter will then be ready for the Court's consideration on

9   the date the response is due.  Objections and responses shall not exceed 10 pages.  The failure to

10  timely object may affect the right to appeal.

11       DATED this 6th day of September, 2019.

12

13       _____

14       BRIAN A. TSUCHIDA
         Chief United States Magistrate Judge

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 9